# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| ELIZABETH M., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. ED CV 20-00819-DFM <br><br> MEMORANDUM OPINION AND ORDER |

## I.  INTRODUCTION

In 2017, Elizabeth M. ("Plaintiff") applied for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning September 15, 2011. See Dkt. 16, Administrative Record ("AR") 237-46.[1] Plaintiff's SSI claim was approved and she was found disabled as of March 2017. See AR 151. Her DIB claim was denied. See AR

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Additionally, all citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

147-50, 171-74. Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ").[2] See AR 57-98.

The ALJ denied the DIB claim on May 1, 2019. See AR 12-30. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 15, 2011, through her date last insured of December 31, 2014. See AR 18. At step two, the ALJ determined that Plaintiff had the severe impairments of "mental impairments diagnosed to include post-traumatic stress disorder (PTSD), bipolar disorder, major depressive disorder, and anxiety disorder with panic attacks and agoraphobia." Id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 19-21.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a "full range of work at all exertional levels" with the following limitations: "limited to performing simple, routine tasks, not performed at a production rate pace such as assembly line work, and can use judgment and deal with changes in a work setting that are required for that type of work. She can have no more than occasional interaction with supervisors and coworkers and can never work with the public." AR 22.

At step four, the ALJ found that Plaintiff could not perform her past relevant work. See AR 24-25. At step five, the ALJ relied on the testimony of a

---

[2] The record also includes a hearing transcript from July 2011. See AR 37-56. In September 2011, Plaintiff's 2010 application for DIB was denied. See AR 259.

vocational expert ("VE") to conclude that someone with Plaintiff's RFC could perform jobs that exist in the national economy, including collator (Dictionary of Occupational Titles or "DOT" 653.687-010), cleaner and polisher (DOT 709.687-010), and mail clerk (DOT 209.687-026). See AR 25-26. Accordingly, the ALJ denied DIB benefits. See AR 25-26.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-6. This action followed. See Dkt. 1.

## II. LEGAL STANDARD

A district court will set aside a denial of Social Security benefits only when the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted). The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 1157 (2019). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III. DISCUSSION

The parties dispute whether the ALJ properly resolved (1) an apparent conflict with the DOT for the occupations of mail clerk and collator and (2) Plaintiff's onset date. See Dkt. 19, Joint Stipulation ("JS") at 5.

A.  **Step Five Determination**

The ALJ assessed Plaintiff as retaining the RFC to perform "the full range of work at all exertional levels" involving "simple, routine tasks, not performed at a production rate pace," only occasional interaction with supervisors and coworkers, and no interaction with the public. AR 22. The ALJ then found that through the date last insured, considering Plaintiff's age, education, work experience, and RFC to do work within the limits that applied, three kinds of jobs existed in significant numbers in the national economy that Plaintiff could have performed: collator (DOT 653.687-010), cleaner and polisher (DOT 709.687-010), and mail clerk (DOT 209.687-026). See AR 25-26.

Plaintiff argues that the ALJ's RFC limiting her to "simple, routine tasks" is inconsistent with the job of mail clerk, which requires Reasoning Level 3. See JS at 6-7. Reasoning Level 3 requires an employee to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT, App'x C, 1991 WL 688702. Striking mail clerk leaves the occupations of collator (13,000 jobs) and cleaner/polisher (8,000 jobs), bringing the total jobs identified to 21,000, which Plaintiff argues is not a "significant number." JS at 6-7. The Commissioner effectively concedes that a conflict exists, arguing instead that 21,000 jobs constitutes a significant number. See id. at 10-12.

According to the Social Security Act, an "individual shall be determined to be under a disability" only if her impairments prevent her from engaging in "substantial gainful work which exists in the national economy"—i.e., "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). The burden of establishing that work exists in "significant numbers" lies with the

4

Commissioner. Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs." Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). "However, a comparison to other cases is instructive." Id. In Beltran, the Ninth Circuit held that 1,680 national jobs was not a significant number. See id. at 390. At the other end of the spectrum, the Ninth Circuit held in Gutierrez v. Comm'r of SSA that the ALJ did not err in concluding that 25,000 national jobs constituted a significant number, although it was a "close call." 740 F.3d 519, 529 (9th Cir. 2014). In so holding, Gutierrez cited with approval to an Eighth Circuit decision holding that 10,000 national jobs was significant. See id. (citing Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997)). Following Gutierrez, various district courts have found that numbers near 21,000 constituted a significant number. See, e.g., Anna F. v. Saul, No. 19-511, 2020 WL 7024924, at *6 (C.D. Cal. Nov. 30, 2020) ("Whether 21,100 jobs in the national economy is 'significant' is not entirely settled, yet the relevant caselaw indicates it is." (citing cases)). Given the legal landscape, the Court finds that, on balance, the existence of 21,000 jobs in the national economy to be sufficient.

 Plaintiff also cursorily argues that her limitation to "simple, routine tasks" is inconsistent with the collator occupation because, despite it requiring Reasoning Level 2, the job necessitates significant worker functions involving data. See JS at 8. "For a difference between an expert's testimony and the Dictionary's listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the Dictionary's listing of job requirements that are essential, integral, or expected." Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016).

 The ALJ did not err because there was no apparent or obvious conflict between the VE's testimony and the skills required in the collator occupation,

5

as set out in the DOT. The VE testified that the collator job is an "entry level" job with a specific vocational preparation of 2, see AR 95, which is consistent with unskilled work. See Terry v. Sullivan, 903 F.3d 1211, 1218 (9th Cir. 1990). That description is consistent with the DOT, which classifies the collator occupation as an unskilled job. See DOT 653.687-010, 1991 WL 685810. And although unskilled work ordinarily involves dealing primarily with objects, rather than with data or people, this is not dispositive. Indeed, as stated in the DOT, "every job requires a worker to function, to some degree, in relation to Data People, and Things." DOT, App'x B, 1991 WL 688701. Additionally, the collator occupation has a Worker Function Code of 6 in regard to the jobs' relationship to data. Level 6, "Comparing," is the lowest level and entails "judging the readily observable functional, structural, or compositional characteristics (whether similar to or divergent from obvious standards) of data, people, or things." Id. Plaintiff does not explain how a limitation to "simple, routine tasks" conflicts with these skills.

The ALJ was entitled to rely on the expert's "experience in job placement" to account for "a particular job's requirements," Social Security Ruling ("SSR") 00-4P, 2000 WL 1898704, at *2, and correctly did so here.

**B.     Onset Date**

As noted above, Plaintiff filed for both DIB and SSI. Plaintiff's DIB application alleged a disability onset date of September 15, 2011.[3] See AR 237-46. Her date last insured for DIB was December 31, 2014. Plaintiff's SSI claim was approved, with a finding that she was disabled as of March 2017. See AR 151-68. The DIB claim was denied, however, with a finding that Plaintiff was not disabled on any date through her date last insured. See AR 147-50. Citing

---

[3] As noted above, Plaintiff was previously found not disabled by an ALJ in a September 14, 2011 decision. See AR 99-116.

Diedrich v. Berryhill, 874 F.3d 634, 639 (9th Cir. 2017), Plaintiff contends that the ALJ committed legal error by not calling a medical advisor at the hearing to determine the correct onset date of her disability. See JS at 16-20.

"The onset date of a disability can be critical to an individual's application for disability benefits. A claimant can qualify for [DIB] only if her disability begins by her date last insured, and these benefits can be paid for up to 12 months before her application was filed." Wellington v. Berryhill, 878 F.3d 867, 827 (9th Cir. 2017). "In contrast, a claimant is eligible for SSI once she becomes disabled, but she cannot receive benefits for any period before her application date." Id. "For both programs, the onset date is the date when the claimant is unable to engage in any substantial gainful activity due to physical or mental impairments that can be expected to last for at least 12 months." Id.

"Under ordinary circumstances, an ALJ is equipped to determine a claimant's disability onset date without calling on a medical advisor." Id. at 874. The Ninth Circuit has directed ALJs to call a medical advisor where the medical evidence was "unavailable," "inadequate," or "ambiguous regarding the possibility" that the onset of the claimant's disability occurred at that time. Id. at 873-74. In those circumstances, "an ALJ's assessment of the disability onset date would be mere speculation without the aid of a medical expert." Diedrich, 874 F.3d at 639. In contrast, the ALJ need not call an advisor when the available evidence "clearly could not support an inference of disability onset during a gap in the medical records," when the record "has no meaningful gaps," or when the ALJ "can reasonably and confidently say that no reasonable medical advisor could infer that the disability began during a period for which the claimant lacked medical documentation." Wellington, 878 F.3d at 873-74.

Notably, Plaintiff's cited cases rely on SSR 83-20, which states that the ALJ "should call on the services of a medical advisor when onset must be

inferred" (emphasis added). The Ninth Circuit has determined that in the context of SSR 83-20, "'should' means 'must.'" Armstrong v. Comm'r of SSA, 160 F.3d 587, 590 (9th Cir. 1998); see also Diedrich, 874 F.3d at 638 ("Relying on SSR 83-20, we have held that where a record is lacking and ambiguous as to the onset date of disability, 'the ALJ must call a medical expert to assist in determining the onset date.'" (citing Armstrong, 160 F.3d at 590)).

SSR 83-20, however, was rescinded and replaced by SSR 18-01p in October 2018, before Plaintiff's April 5, 2019 administrative hearing. See SSR 18-01p, at § III ("This SSR is applicable on October 2, 2018 . . . We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date."); see also Petersen v. Berryhill, 737 F. App'x 329, 332 n.1 (9th Cir. 2018) ("Because the prior [SSR] ruling was in effect at the time of the ALJ's decision, the ALJ was bound to follow it."). In contrast to SSR 83-20, SSR 18-01p gives ALJs the discretion to appoint a medical advisor to help determine the established onset date, but does not require them to do so:

> At the hearing level . . ., if the ALJ needs to infer the date that the claimant first met the statutory definition of disability, he or she may call on the services of an ME by soliciting testimony or requesting responses to written interrogatories (i.e., written questions to be answered under oath or penalty of perjury). The decision to call on the services of an ME is always at the ALJ's discretion. Neither the claimant nor his or her representative can require an ALJ to call on the services of an ME to assist in inferring the date that the claimant first met the statutory definition of disability.

SSR 18-01p, at § I.B.2 (emphasis added).

Regardless of which standard applies, the ALJ did not err. Here, unlike Diedrich, there was no "large gap" in the medical records. See 874 F.3d at 639 ("Diedrich did not see a psychologist until years after her alleged onset date; there are no mental health records for nearly two years surrounding her date last insured."). Instead, the available records provide an adequate chronology of Plaintiff's mental health from her alleged onset date through her date last insured, and even thereafter. See AR 352-90 (progress notes from March 2012 to June 2016), 648-722 (progress notes from January 2010 to January 2012). Plaintiff's 2012-2013 psychotherapy appointments, for example, occurred every few months and sometimes once a month. See, e.g., AR 356 (March 2012), 357 (May 2012), 358 (June 2012), 359 (July 2012), 360 (August 2012). Although there are gaps from 2013 to 2015, "there are not so few relevant medical records on file as to evoke the ALJ's duty to develop the record under SSR 83-20." Wellington, 878 F.3d at 875.

Moreover, the ALJ found, and the record supports, that findings upon mental status examination were largely within normal limits, which weighed against Plaintiff's complaints of a disabling mental impairment prior to her date last insured. See AR 23. Specifically, the ALJ noted that Plaintiff showed "a euthymic and stable mood, full affect, linear and goal directed thought process, no psychomotor agitation and fair insight and judgment." Id. (citing AR 663, 665, 667, 669). The ALJ also noted that other than a brief hospitalization in 2012 due to experiencing suicidal thoughts, Plaintiff's mental health treatment was otherwise fairly conservative through the date last insured. See id.

Plaintiff does not challenge these findings, except to suggest that the mental status examinations utilized by the Commissioner to establish disability for SSI in 2017 are not significantly different than the mental status examinations from 2012 to 2015. See JS at 20. To the contrary, Plaintiff

acknowledged that her condition worsened in summer 2015, <u>after</u> her date last insured. In November 2015, Plaintiff sought treatment and reported her last clinic visit as in June 2013, after which she had weaned herself off of her medications and was doing "ok" for a while. AR 374. In the summer of 2015, however, her close friend's parents both died, which started "the downhill process" that was exacerbated by issues with her brother-in-law. <u>Id.</u>

Because the record was adequate, the ALJ was not required to consult a medical advisor before determining Plaintiff's disability onset date.

## IV.   CONCLUSION

The decision is the Social Security Commission is AFFIRMED and this case is dismissed with prejudice.

IT IS SO ORDERED.

Date: March 19, 2021

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge